UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------X

NEW YORK STATE COURT CLERKS ASSOCIATION,
MONICA BURNS SHAW, on behalf of herself
and all others similarly situated,

                        Plaintiffs,            13 Civ. 7691

    -against-                               OPINION

UNIFIED COURT SYSTEM OF THE STATE OF
NEW YORK, OFFICE OF COURT ADMINISTRATION,
HONORABLE JONATHAN LIPPMAN, as Chief Judge
of the New York State Unified Court System,
HONORABLE A. GAIL PRUDENTI, as Chief
Administrative Judge of the New York State
Unified Court System, HONORABLE LAWRENCE K.
MARKS, as First Deputy Chief Administrative
Judge of the New York Unified Court System,
and the HONORABLE FERN A. FISHER, as Deputy
Chief Administrative Judge for the New York
City Courts,

                        Defendants.

-------------------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiffs

        PITTA & GIBLIN, LLP
        120 Broadway, 28th Floor
        New York, NY 10271
        By:  Bruce J. Cooper, Esq.
             Lauren Bonaguro, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/9/14

Attorney for State Judge Defendants

ERIS T. SCHNEIDERMAN
Attorney General of the State of N.Y.
120 Broadway
New York, NY 10271
By:  Andrew H. Meier, Esq.
     Michael A. Berg, Esq.

Attorney for Defendants UCS and OCA

JOHN W. MCCONNELL
Office of Court Administration
Empire State Plaza
4ESP, Suite 2001
Albany, NY 12223-1450
By:  John J. Sullivan, Esq.
     Lee A. Adlerstein, Esq.

**Sweet, D.J.**

The defendants the Honorable Jonathan Lippman, Chief Judge of the State of New York ("Judge Lippman"), the Honorable A. Gail Prudenti, Chief Administrative Judge of the Courts of the State of New York ("Judge Prudenti"), the Hon. Lawrence K. Marks, First Deputy Chief Administrative Judge of the Courts of the State of New York ("Judge Marks"), and the Hon. Fern A. Fisher, Deputy Chief Administrative Judge for the New York City Courts ("Judge Fisher") (collectively, the "State Judges" or "Administrative Judges") have moved pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the amended complaint ("AC") of the plaintiffs New York State Court Clerks Association ("Association") and Monica Shaw Burns ("Shaw") (collectively, the "Plaintiffs") for lack of subject matter jurisdiction. The defendants the Unified Court System of the State of New York ("UCS") and Office of Court Administration ("OCA") (collectively, with the State Judges, the "Defendants") have similarly moved pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss the AC. Based on the conclusions set forth below, the motions of the State Judges and the UCS and OCA are granted.

**Prior Proceedings**

This action was initiated by the filing of a complaint by the Plaintiffs on October 30, 2013. The AC was filed on December 11, 2013.

The UCS and OCA filed their motion to dismiss on January 9, 2014. The State Judges filed their motion a day later, January 10, 2014. The instant motions were heard and marked fully submitted on March 19, 2014.

**The AC**

The Association is the union representing court clerks employed by UCS in its New York City courts. AC ¶ 7. The Association brings this suit on behalf of its members; Shaw is a Senior Court Clerk and a union delegate who joins the suit on behalf of herself and others similarly situated. AC ¶¶ 2, 7-8.

UCS is the judicial branch of the State of New York. AC ¶ 9. The AC alleges that OCA is the "administrative office" of the UCS. AC ¶ 10. Also named as defendants -- all sued only

3

in their official capacities -- are the State Judges. AC ¶¶ 11-14.

The AC alleges that, because of budget-related workforce reductions and increased court caseloads, clerks have been expected to "meet the increasing daily demands ... without incurring overtime cost ... creat[ing] a climate where [c]lerks felt compelled to work past normal hours in order to finish their work" and that certain unnamed court managers "allowed [that] to happen." AC ¶ 24. Plaintiffs allege that in order to meet the "impossible" workload demands, certain Association members "began working overtime hours despite not receiving compensation." AC ¶ 25.

The AC alleges that Lawrence Barron, a Senior Court Clerk in Kings County Supreme Court, took it upon himself to complete his work by working without compensation "through the night on" Fridays and continuing to work "all day Saturday." AC ¶ 28. He allegedly did so "with the knowledge and consent" of an unnamed "immediate supervisor." AC ¶ 28.

OCA's Director of Human Resources has told the Association that employees authorized to work overtime are

4

compensated and that OCA does not allow employees to work voluntarily without compensation. AC ¶¶ 31, 33.

Some unspecified number of employees have allegedly worked overtime without being compensated. AC ¶ 39. The basis for this assertion is alleged discrepancies between an employee's Kronos (the electronic daily timekeeping system) record and the employee's time-stamped entries in the court's separate case management database, the Universal Case Management System ("UCMS"). AC ¶¶ 40-49. The AC alleges that unnamed supervisors may be editing Kronos time records of clerks who have worked beyond 5 :00 p.m. (as allegedly evidenced by their UCMS entries) to adjust the employee's swipe-out time back to 5:00 p.m., in order to prevent that employee from receiving overtime compensation. See AC ¶ 43 ("[I]f a clerk swipes out of the Kronos system for instance at 7:00 p.m., that clerk's swipe out time can be adjusted by his or her supervisor back to 5:00 pm ....") The AC alleges also that "some clerks" have clocked out - apparently on their own - at 5:00 p.m., but that their UCMS entries allegedly show they have worked past that time, and they have not been compensated for such alleged additional work. AC ¶ 49. The AC is silent as to whether such unnamed employees were told to work after 5:00 by their supervisors, or worked

5

after 5:00 without appropriate authorization, or worked after 5:00 despite contrary direction. Shaw alleges that she has worked more than 103 hours of uncompensated overtime over an unspecified period. AC ¶ 55.

The AC alleges that Defendants violated the Fair Labor Standards Act ("FLSA") by failing to pay Shaw (and others similarly situated) wages for all hours worked, AC ¶ 65, and overtime wages for hours worked in excess of 40 hours a week, AC ¶ 71. Plaintiffs also seek, pursuant to the Declaratory Judgment Act (28 U.S.C. §§ 2201, 2202), a declaration that the FLSA was and continues to be violated. AC ¶¶ 1, 74.

The AC alleges as to the State Judges that:

> Defendant, the Honorable Jonathan Lippman . . . is the Chief Judge of the State of New York. The Chief Judge, with the approval of the Administrative Board of Courts, is charged with establishing statewide standards and administrative policies.  The Hon. Judge Lippman is named herein as a Defendant solely in his official capacity. AC ¶ 11.

> Defendant, the Honorable A. Gail Prudenti . . . is the Chief Administrative Judge of the State of New York, and is charged with supervising the administration and operation of the State's trial courts. The Hon. Judge Prudenti is named herein as a Defendant solely in her official capacity. AC ¶ 12.

6

Defendant, the Honorable Lawrence K. Marks . . . is
the First Deputy Chief Administrative Judge, is
charged with assisting the Chief Administrative Judge
in her functions, as well as coordinating the court
system's efforts at improving management of its
caseloads and eliminating backlog.  The Hon. Judge
Marks is named herein as a Defendant solely in his
official capacity. AC ¶ 13.

Defendant, the Honorable Fern A. Fisher . . . is the
Deputy Chief Administrative Judge for the New York
City Courts, and is responsible for overseeing the
day-to-day operations of the trial-level courts in New
York City in order to allocate and assign judicial and
non-judicial personnel resources to meet the needs of
those courts.  The Hon. Judge Fisher is named herein
as a Defendant solely in her official capacity. AC
¶ 14.

    The AC adds the following allegation:

Upon information and belief, OCA set a policy that
was, and continues to be, administratively authorized,
permitted and condoned by USC [sic] and the Hon.
Administrative Judges which expected Court Managers
and Clerks to meet the increasing daily demands of
their Clerks and do so without incurring overtime
cost; this created a climate where Clerks felt
compelled to work past normal hours in order to finish
their work and Court Managers, under pressure to have
the work done, allowed it to happen. AC ¶ 24.

    The AC retains the two original claims in the

complaint for violation of the FLSA and adds a third claim for a

declaratory judgment. Declaratory judgment was also sought in

the AC's "Prayer for Relief." AC ¶ b. The AC seeks a declaration that "Defendants have and continue to willfully and wrongfully violate their statutory obligations under the FLSA ...." *Id.*

## The Applicable Standard

On a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims . . . .'" *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Plaintiffs must allege sufficient facts to "nudge[ ]

8

their claims across the line from conceivable to plausible."
*Twombly*, 550 U.S. at 570. Though the Court must accept the
factual allegations of a complaint as true, it is "'not bound to
accept as true a legal conclusion couched as a factual
allegation.'" *Iqbal*, 129 S. Ct. at 1950 (quoting *Twombly*, 550
U.S. at 555).

Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion
requires the plaintiff to "'allege in [its] pleading the facts
essential to show jurisdiction,' and [to] 'support (those facts)
by competent proof.'" *Sierra v. United States*, No. 97 Civ. 9329,
1998 U.S. Dist. LEXIS 14135, at *10-11 (S.D.N.Y. Sept. 9, 1998)
(quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S.
178, 189, 56 S. Ct. 780, 785 (1936) (additional citations
omitted)). Plaintiffs bear the burden of establishing
jurisdiction. *Id. See also Bagnall v. Sebelius*, No. 11 Civ. 1703
(MPS), 2013 U.S. Dist. LEXIS 135251, at *19-20 (S.D.N.Y. June
13, 2013).

**The Eleventh Amendment Bars the Claims Against UCS and OCA**

Claims are properly dismissed for lack of subject
matter jurisdiction under Rule 12(b)(1) when the court lacks

9

statutory or constitutional power to adjudicate those claims.
*See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).
Sovereign immunity as guaranteed by the Eleventh Amendment to
the Constitution bars suits for damages in federal court against
states, state agencies and state officials acting in their
official capacity, absent the state's waiver of Eleventh
Amendment immunity, *see Woods v. Rondout Valley Cent. Sch. Dist.
Bd. Of Educ.*, 466 F.3d·232, 236 (2d. Cir. 2006), or
Congressional abrogation of that immunity by an unequivocal and
valid exercise of its power under section 5 of the Fourteenth
Amendment, *see Tennessee v. Lane*, 541 U.S. 509, 517-18 (2004).
This jurisdictional bar extends to suits for injunctive relief
against states. *See Pennhurst State School & Hospital v.
Haldeyman*, 465 U.S. 89, 100 (1984).

UCS is the judicial branch of New York state
government, and OCA is a state agency; both therefore possess
Eleventh Amendment sovereign immunity from suit. *See Gollomp v.
Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009) (holding that "the New
York State Unified Court System is unquestionably an 'arm of the
State' and is entitled to Eleventh Amendment sovereign immunity"
(quoting *Woods*, 466 F.3d 232 at 236)); *Posr v. Court Officer
Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999) (holding that

OCA "is an arm of the state" and therefore enjoys the same
Eleventh Amendment immunity as the state itself); *Canales-Jacobs
v. New York State Office of Court Admin.*, 640 F. Supp. 2d 482,
498-99 (S.D.N.Y. 2009); *Anderson v. State of New York. Office of
Court Admin. Of Unified Court Sys.*, 614 F. Supp. 2d 404, 426
(S.D.N.Y. 2009).

Congress did not, in enacting the FLSA, abrogate state
sovereign immunity. *Alden v. Maine*, 527 U.S. 706, 712 (1999)
(citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996)
(holding that "Congress lacks power under Article I to abrogate
the States' sovereign immunity from suits commenced or
prosecuted in the federal courts")). As Chief Judge Preska has
explained:

> In enacting the FLSA, Congress did not abrogate the
> sovereign immunity of the states. Indeed, Congress
> could not do so; acts such as the FLSA that are
> enacted pursuant to Congress' Article I power cannot
> abrogate the sovereign immunity of the states.

*Quitt v. City University of New York*, 2009 WL 4059209 at *4
(S.D.N.Y. Nov. 20, 2009) (citing *Alden*, 527 U.S. at 712)
(additional citations omitted).

The State of New York has not consented to be subject to the FLSA or otherwise waived its immunity from suits under that statute in the federal courts. *Quitt v. City University of New York*, No. 09 Civ. 4026(LAP), 2009 WL 4059209, at *2 (S.D.N.Y. Nov. 20, 2009). Accordingly, UCS and OCA are protected from the FLSA claim by their Eleventh Amendment sovereign immunity, and the action as against them is dismissed.

To the extent Plaintiffs assert a separate claim for a declaratory judgment that the FLSA has been violated by defendants UCS and OCA, it cannot be maintained in the absence of a justiciable FLSA claim. A claim for declaratory relief under the Declaratory Judgment Act (28 U.S.C. §§ 2201, 2202) ("DJA") requires a controversy that can be decided by the court, *i.e.*, the presence of a claim of a substantive right that will trigger the court's adjudicative function. *See S. Jackson & Son. Inc. v. Coffee. Sugar & Cocoa Exchange. Inc.*, 24 F.3d 427, 431 (2d Cir. 1994) ("[A] mere demand for declaratory relief does not by itself establish a case or controversy necessary to confer subject matter jurisdiction."). The DJA is not an independent cause of action, *id.*, and the court can exercise jurisdiction pursuant to that procedural statute only where the court would otherwise have jurisdiction over a claim against a defendant,

12

*see Skelly Oil v. Phillips Petroleum Corp.*, 339 U.S. 667, 671-72 (1950) ("'(T)he operation of the Declaratory Judgment Act is procedural only.' Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." (internal citation omitted); *Gibraltar. P.R. Inc. v. Otoki Group. Inc.*, 104 F.3d 616, 619 (4th Cir. 1997). Because the court has no subject matter jurisdiction over plaintiffs' FLSA claim against UCS and OCA, it lacks jurisdiction over a claim against them for relief under the DJA seeking a declaration that the FLSA has been violated. *See, e.g., City of Charleston v. Boggess*, 12-cv-00225, 2012 WL 3925879 (Sept. 7, 2012 S.D.W.Va.) (where no claim arises under FLSA, no jurisdiction to decide a DJA claim concerning a potential FLSA violation).

Even if the Eleventh Amendment were not a bar to this action as against OCA and UCS, "[c]ourts have ... uniformly held that 'the right to bring an action for injunctive relief under the Fair Labor Standards Act rests exclusively with the United States Secretary of Labor.'" *United Food & Commercial Workers Union, Local 1564 of New Mexico v. Albertson's, Inc.*, 207 F.3d 1193, 1197-98 (10th Cir. 2000) (quoting *Powell v. Florida*, 132 F.3d 677, 678 (11th Cir. 1998)). The Court thus would have

jurisdiction to entertain a request for injunctive relief only
from the Secretary of Labor, not Plaintiffs. *See Howard v. City
of Springfield, Illinois*, 274 F.3d 1141, 1144-45 (7th Cir.
2001). Moreover, the Court lacks jurisdiction over any FLSA
claim (for injunctive relief or damages) made by the Association
on behalf of its members because the Association lacks any
"'personal stake' in the litigation 'to justify exercise of the
court's remedial powers.'" *State of Nevada Employees' Ass'n,
Inc., v. Bryan*, 916 F.2d 1384, 1391-92 (9th Cir. 1990) (citing
*Arlington Heights v. Metro. Housing Corp.,* 429 U.S. 252, 261,
(1977); *see also New York Metro Area Postal Union v. Potter*, No.
00 Civ. 8538(LTS)(RLE), 2003 WL 1701909, *2 (Mar. 31, 2003
S.D.N.Y.) ("[T]he Courts that have considered this issue [in the
FLSA context] have generally held that unions lack standing to
bring representative suits on behalf of their members under
FLSA." (quoting *United Food,* 207 F.3d at 1198)).

        In their responsive papers, Plaintiffs have
acknowledged "that the Eleventh Amendment precludes them from
seeking recovery as against UCS and OCA." Opp. at 4. The claims
against Defendants UCS and OCA are thus barred by the Eleventh
Amendment.

## The Eleventh Amendment Bars the Claims Against the State Judges

The Eleventh Amendment stands as a jurisdictional bar to suits in federal court against a state and its officers in their official capacities, absent an unequivocal waiver of sovereign immunity by the state or an unequivocal abrogation of that immunity by Congress. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (Eleventh Amendment bars claims against a state or state officials sued for damages in their official capacity). *See also Quitt v. City Univ. of New York*, No. 09 Civ. 4026 (LAP), 2009 U.S. Dist. LEXIS 110279, at *3 (Nov. 20, 2009) ("The doctrine of sovereign immunity is jurisdictional in nature.") (citing *FDIC v. Aleyer*, 510 U.S. 471, 475 (1994)).

"To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Gan v. City of New York*, 996 F.2d 529 (2d Cir. 1993). The Second Circuit and Southern District courts have repeatedly enforced this jurisdictional bar. *See Darcy v. Lippman*, 356 Fed. Appx. 434, 436-37 (2d Cir. 2009) (summary order) (affirming dismissal under Eleventh Amendment of claims against state officers in

15

their official capacities); *New York Ass'n of Homes and Servs. for the Aging, Inc. v. DeBuono*, 444 F.3d 147, 148 (2d Cir. 2006) (per curium) (holding that officers of the New York Department of Health sued in their official capacity are entitled to Eleventh Amendment sovereign immunity); *Dupont v. New Jersey State Police*, No. 08 Civ. 110220 (DLC), 2009 U.S. Dist. LEXIS 71990, at *20 n.5 (S.D.N. Y. Aug. 14, 2009) ("Claims brought under federal law against state officers sued in their official capacity are barred by the Eleventh Amendment to the extent that the relief sought is retrospective.") (internal citation omitted); *Crockett v. Pataki*, 97 Civ. 3539 (LAP), 1998 U.S. Dist. LEXIS 14393, at *14 (S.D.N.Y. Sept. 14, 1998) (dismissing claims against governor and housing commissioner sued in their official capacity); *Sassower v. Mangano*, 927 F. Supp. 113, 121 (S.D.N.Y. 1996) (dismissing claims for damages against state officials sued in their official capacity); *Muhammad v. Rabinowitz*, 11 Civ. 2428 (HB), 2012 U.S. Dist. LEXIS 49163, at *18 (S.D.N.Y. Apr. 5, 2012) (dismissing claims for damages against state employees in their official capacity as being barred by the Eleventh Amendment).

As set forth above, Congress did not abrogate the states' sovereign immunity in FLSA cases.

The Plaintiffs have conceded that the doctrine of
sovereign immunity enshrined in the Eleventh Amendment bars
their claims against the State Judges for damages and for
retrospective injunctive and declaratory relief. Plaintiffs
contend that "limited exception to the general principle of
sovereign immunity" created by *Ex Parte Young*, 209 U.S. 123
(1908), permits them to seek prospective injunctive and
declaratory relief against the State Judges. *See Kuritz v. New
York*, 11-CV-1529 (MAD/CRH), 2012 U.S. Dist. LEXIS 174031, at *11
(N.D.N.Y. Dec. 3, 2012). Under the Young doctrine, a suit may
proceed against a state official in his or her official capacity
when a plaintiff "(a) alleges an ongoing violation of federal
law and (b) seeks relief properly characterized as prospective."
*Id.* at *12 (citing *In re Deposit Ins. Agency*, 482 F.3d 61 618
(2d Cir. 2007) (quotations and citations omitted)).

However, it is recognized that "the FLSA contains a
broad remedial scheme such that the application of the *Ex Parte
Young* doctrine is inappropriate." *Mulverhill v. New York*, No.
87-CV-853, 1997 U.S. Dist. LEXIS 10109, at *24 (N.D.N.Y. July
10, 1997) (citing *Seminole Tribe*, 116 S. Ct. at 1132-33)
(additional citations omitted). "Where Congress has prescribed a

detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon Parte Young." *Seminole Tribe*, 517 U.S. at 74.

As noted above, only the United States Secretary of Labor is authorized to seek injunctive relief for alleged violations of the FLSA's minimum wage and overtime compensation provisions. Employees themselves have no right to seek injunctive relief under those provisions. *See, e.g.*, *Indergit v. Rite Aid Corp.*, No. 08 Civ. 9361 (PGG), 2010 U.S. Dist. LEXIS 32322, at *42-43 (S.D.N.Y. Mar. 31, 2010) ("An injunction is not an available remedy in an action brought by employees under the FLSA for failure to pay . . . overtime compensation." (quotation marks omitted)); *Ruggles v. Wellpoint, Inc.*, 253 F.R.D. 61, 68 (N.D.N.Y. 2008) (striking employees' demand for injunctive relief under minimum wage and overtime provisions of FLSA).

In their Third Claim for Relief, plaintiffs seek "a declaratory judgment that defendants administratively and wrongfully and willfully violated, and continue to violate, their statutory obligations under the FLSA, and deprived, and

18

continue to deprive, Plaintiff Shaw and others similarly situated of their rights and entitlements under the FLSA." AC ¶ 74. The Plaintiffs are not asking the Court to resolve a disputed question of law, they are not challenging the legality of any policy of the State Judges, nor asking the Court to determine the legality of any action taken by the State Judges. Instead, they seek a ruling that the Defendants are liable to them for allegedly violating the FLSA.

As an initial matter, the Eleventh Amendment bars retrospective declaratory relief against state officials, *Green v. Mansour*, 474 U.S. 64, 74 (1985); *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000). Thus, Plaintiffs' claim for a declaration that the Defendants "violated" and "deprived" the Plaintiffs "of their rights and entitlements under the FLSA," or otherwise committed unlawful acts in the past, must be dismissed.

Although the Plaintiffs amended their complaint to add the phrases "continue to violate" and "continue to deprive" to their prayer for declaratory relief, Compare Compl., Prayer for Relief, with AC ¶ 74, merely alleging in conclusory terms that the defendants "continue" to breach the FLSA does not state a

claim upon which relief can be granted. *See Twombly*, 550 U.S. at
555 (a court is "'not bound to accept as true a legal conclusion
couched as a factual allegation'").

According to the AC, the collective bargaining
agreement between Plaintiffs and the UCS specifically provides
that "any hours worked in excess of forty (40) are computed at
time and a half." AC ¶¶ 54-55. According to Plaintiffs, there is
no question for this Court to resolve as to whether Plaintiffs
are entitled to overtime compensation for hours worked over
forty per week; it is set forth in the collective bargaining
agreement. "This fact in itself makes declaratory judgment
inappropriate," because "[a] cause of action for a declaratory
judgment is unnecessary and inappropriate when the plaintiff has
[an] adequate, alternative remedy in another form of action,
such as breach of contract." *Deutsche Alt-A Secs. Mortg. Loan
Trust v. DB Structured Prods.*, 12 Civ. 8594 (RWS), 2013 U.S.
Dist. LEXIS 104417, at *52-53 (S.D.N.Y. July 23, 2013) (quoting
*Apple Records, Inc. v. Capitol Records. Inc.*, 137 A.D.2d 50, 53,
529 N.Y.S.2d 279 (1st Dep't 1988)); *see also Mulverhill*, 1997
U.S. Dist. LEXIS 10109, at *26-27 (declining plaintiffs leave to
amend to bring claim for prospective declaratory relief where it

was already established that plaintiffs were entitled to
"overtime for hours worked in excess of forty in one week").

The State Judges' opening brief contained two
contentions that were not addressed by Plaintiffs: (1) that
"'the FLSA contains a broad remedial scheme such that the
application of the *Ex Parte Young* doctrine is inappropriate,"
*see* State Judges' Mem. at 8-9, and (2) "[a]n injunction is not
an available remedy in an action brought by employees under the
FLSA for failure to pay minimum wages or overtime compensation,"
*see id.* at 9 (citing *Indergit v. Rite Aid Corp.*, No. 08 Civ.
9361 (PGG), 2010 U.S. Dist. LEXIS 32322, at *42-43 (S.D.N.Y.
Mar. 31, 2010) (dismissing employee's claim for injunction under
overtime provisions of FLSA); *Ruggles v. Wellpoint, Inc.*, 253
F.R.D. 61, 68 (N.D.N.Y. 2008) (striking employees' demand for
injunctive relief under minimum wage and overtime provisions of
FLSA)). It is well settled in the Second Circuit that "that '[a]
plaintiff's failure to respond to contentions raised in a motion
to dismiss claims constitute an abandonment of those claims.'"
*Mcleod v. Verizon New York, Inc.*, No. 13-CV-1751 (ADS) (AKT),
2014 U.S. Dist. LEXIS 16242, at *18 (Feb. 1, 2014) (quoting
*Youmans v. Schriro*, No. 12 Civ. 3690 (PAE) (JCF), 2013 U.S.
Dist. LEXIS 171180, at *5 (S.D.N.Y. Dec. 3, 2013) (collecting

21

cases)). Apart from the merits of the State Judges' arguments, Plaintiffs' failure to address the point "'provides an independent basis for dismissal.'" *Brandon v. City of New York*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (quoting *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y.), *aff'd*, 130 F.3d 110 1101 (2d Cir. 1997)). Accord *In re Adelphia Comms. Corp. Sec. & Deriv. Litig.*, No. 03 MDL 1529 (JMF), 2013 U.S. Dist. LEXIS 180771, at *51-52 (S.D.N.Y. Dec. 27, 2013) (dismissing claim where plaintiff failed to oppose defendant's argument). By failing to address these arguments in their opposition memorandum, Plaintiffs concede that the FLSA establishes a broad remedial scheme that precludes this Court from exercising jurisdiction over their claims, regardless of the relief sought. In addition, Plaintiffs' claims for injunctive relief must be dismissed because Plaintiffs have abandoned their opposition to the contention that the FLSA bars employees from seeking injunctive relief against their employers for alleged violations of the FLSA's minimum wage and overtime provisions.

Moreover, the Eleventh Amendment continues to bar all of Plaintiffs' claims in the entirety because even a prospective declaratory judgment "is not available when the result would be

a partial 'end run' around the rest of the Supreme Court's
Eleventh Amendment jurisprudence, particularly its limitations
on the *Ex Parte Young* doctrine." *Mills*, 118 F.3d at 55 (quoting
*Mansour*, 474 U.S. at 73). The Supreme Court in *Mansour* explained
that the Eleventh Amendment bars prospective declaratory relief
where "the result would be little different than a prohibited
direct federal court award of money damages against the state to
the extent it would reduce a state court proceeding into a mere
accounting session 'whereby damages or restitution could be
computed.'" *Id.* This is the exact scenario here: the ruling
Plaintiffs seek – that the State Judges, in their official
capacity, are violating the FLSA on a continuing basis – would
be binding on the New York State courts, allowing Plaintiffs to
seek damages there.

The purpose of a declaratory judgment is to clarify
"the rights and other legal relations" of the parties. *See* 28
U.S.C. § 2201(a). Here Plaintiffs seek to recast a claim for
damages as a claim for a declaratory judgment that the State
Judges are in violation of the FLSA. *See* AC ¶ 74 (demanding "a
declaratory judgment that defendants administratively and
wrongfully and willfully violated, and continue to violate,
their statutory obligations under the FLSA, and deprived, and

23

continue to deprive, Plaintiff Shaw and others similarly situated of their rights and entitlements under the FLSA."). This kind of end run around the Eleventh Amendment is not permitted.

Some courts have entertained claims for prospective declaratory relief against state officials under the FLSA, but those courts were asked to resolve contested questions affecting the rights and legal relations of the parties. For example, in *Balgowan v. New Jersey*, 115 F.3d 214, 218 (3d Cir. 1997), the court was called upon to declare whether or not the plaintiffs were exempt from the overtime provisions of the FLSA pursuant to the "professional exemption" and the Department of Labor's "salary-basis test."

Relying on *Balgowan*, the court in *Dino v. Pennsylvania*, No. 08-cv-014932009, 2009 U.S. Dist. LEXIS 112821 (M.D. Pa. Sept. 4, 2009), declined to dismiss, on Eleventh Amendment grounds, a claim for a similar declaratory judgment, specifically "a ruling that [plaintiffs] are nonexempt employees under the FLSA." *Dino*, 2009 U.S. Dist. LEXIS 112821, at *8-9.

24

Similarly, in *Silveira v. Beard*, No. 1 3-CV-0084 AWI
BAM, 2013 U.S. Dist. LEXIS 79975, at *14-15 (E.D. Cal. June 6,
2013), the court ruled that the plaintiffs could be entitled to
a prospective declaratory judgment instructing the defendant on
how to properly calculate their rate of pay in accordance with
the FLSA, and thus granted them leave to amend their complaint
to amplify their claim for prospective declaratory relief. In
doing so the court cautioned the plaintiffs that the "amended
complaint must describe the precise declaratory relief sought,
meaning the Prayer should describe which specific practices of
[the defendants] are presently violating which specific
provisions of the FLSA."

Unlike the plaintiffs in *Balgowan*, *Dino*, and *Silveira*,
Plaintiffs here are not asking the Court to "declare the rights
and other legal relations of any interested party seeking such
declaration." *See* 28 U.S.C.S. § 2201. They seek a declaration
that the Defendants are liable to them for overtime. Plaintiffs
contend that their declaratory judgment claim should be allowed
to proceed because Dino is "very similar to the case at bar."
However, *Dino* sought a prospective ruling to resolve a dispute
over whether employees were exempt from the FLSA. By contrast,
Plaintiffs here seek only a declaration as to liability, *i.e.*,

25

that they are entitled to time and-a-half pay if they work
overtime in the future. Plaintiffs make no attempt to argue that
their claims are similar to those allowed to proceed in *Balgowan*
*and Silveira*.

Finally, "a district court's decision to issue a
declaratory judgment is discretionary: 'The Declaratory Judgment
Act provides that a court 'may declare the rights and other
legal relations of any interested party,' not that it must do
so.'" *Daebo Int'l Shipping Co. v. Americas Bulk Transp.*, No. 12
Civ. 7960 (PAE), 2013 U.S. Dist. LEXIS 70731, at *7 (S.D.N.Y.
May 17, 2013) (quoting *MedImmune, Inc. v. Genentech*, *Inc.*, 549
U.S. 118, 136, 127 S. Ct. 764, 776-77 (2009) (internal citation
omitted)). Here, there is no disputed issue of law to be
resolved.

**The AC Fails to Allege Adequately that the**
**State Judges Have Violated the FLSA**

Only an employer can be held liable under the FLSA.
*Diaz v. Consortium for Worker Educ., Inc.*, No. 10 Civ. 01848
(LAP), 2010 U.S. Dist. LEXIS 107722, at *5 (S.D.N.Y. Sept. 28,
2010). The term "employer" includes "'any person acting directly
or indirectly in the interest of an employer in relation to an

26

employee.'" *Id.* (quoting 29 U.S.C. § 203(d)). "[T]he term 'employer' under the FLSA has been interpreted to include individuals with substantial control over the aspect of employment alleged to have been violated but not those who do not control the terms and conditions of employment." *Id.* (citing *Johnson v. A. P. Prods., LTD*, 934 F. Supp. 625, 629 (S.D.N.Y. 1996)).

To determine whether an individual is an "employer" within the meaning of the FLSA, the courts consider the "economic reality" of the relationship." The 'economic reality' test is designed to constrain the otherwise broadly applicable plain language of the statute, which 'taken literally would support liability against any agent or employee with supervisory power over [other] employees.'" *Id.* at *6 (quoting *Johnson*, 934 F. Supp. 2d at 628). Relevant factors under the economic reality test include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (citing *Herman v. RSR Sec. Servs., LTD*, 172 F.3d 132, 139 (2d Cir. 1999)).

27

Plaintiffs are required to plead sufficient facts to support a finding that the defendant is an "employer" based on the economic reality test:

> [M]ere boilerplate allegations that an individual meets the various prongs of the economic reality test stated solely upon information and belief and without any supporting details - essentially, "a formulaic recitation of the elements of a cause of action" – are insufficient to raise plaintiffs' right to relief "above a speculative level" with respect to that individual's liability as an employer under the FLSA.

*Tracy v. NVR, Inc.*, 667 F. Supp. 2d 244, 247 (W.D.N.Y. 2009) (quoting *Twombly*, 550 at 555).

Plaintiffs have conceded that the Second Circuit applies a four-factor "economic reality" test to determine whether an employment relationship exists. Plaintiffs do not claim that they satisfy any of the four factors that comprise the "economic reality" test. It is undisputed that the State Judges: (1) do not have the power to hire and fire the Plaintiffs; (2) do not supervise and control work schedules and conditions of employment; (3) do not determine the rate and method of pay; and (4) do not maintain employment records. *See Herman v. RSR Sec. Servs., Ltd.*, 173 F.3d 132, 139 (2d Cir. 1999). In view of the "totality of the circumstances," *Diaz*,

28

2010 U.S. Dist. LEXIS 107722, at *6, the Plaintiffs have not
alleged facts to establish that the State Judges exercised
control over the terms of Plaintiffs' employment.

The Plaintiffs have here contended that the State
Judges "[c]ollectively ... have the authority to set policies
that effect [sic] the day to day administration of the court
clerks, including without limitation their work schedules,
courtroom assignments, hours of work, and overtime policies."
There is no allegation that the State Judges actually set any
policies concerning the court clerks, much less required them to
work overtime without compensation.

The AC states, on "information and belief," that the
Office of Court Administration, "set a policy that was, and
continues to be, administratively authorized, permitted, and
condoned by USC [sic] and the [State Judges] which expected
Court Managers and Clerks to meet the increasing daily demands
of their Clerks and to do so without incurring overtime cost;
this created a climate where Clerks felt compelled to work past
normal hours in order to finish their work and Court Managers,
under pressure to have the work done, allowed it to happen." AC
¶ 24. Plaintiffs thus allege that the purported policy was "set"

29

by OCA, which Plaintiffs concede enjoys sovereign immunity. The allegation that the State Judges somehow condoned the purported policy, fails to identify neither any actual UCS policy nor any statements or actions by the State Judges that can be construed as supporting it, and the allegations that the purported policy "created a climate" in which the Clerks opted to work overtime without seeking overtime pay fails to identify anything that the State Judges did or said. Accordingly, the AC fails to allege any FLSA violation by the State Judges.

**Conclusion**

Based on the conclusions set forth above, the motions of UCS and OCA and the State Judges are granted and the AC dismissed with prejudice.

It is so ordered.

Dated:   New York, New York
         June 9, 2014

                                    Robert W. Sweet, U.S.D.J.